IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MONDELĒZ DATA BREACH LITIGATION | Master File No. 1:23-cv-03999<br><br>Hon. Jorge L. Alonso |
| IN RE: BRYAN CAVE LEIGHTON PAISNER, LLP DATA BREACH LITIGATION | Master File No. 1:23-cv-04249<br><br>Hon. Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

I. **INTRODUCTION**

Plaintiffs Michael Shields, Daniel Berndt, Augustyn Wiacek, Diedra Clay, and Julio Perez (the "Mondelēz Plaintiffs") and Plaintiffs Eric Flores and Rock Meyer (the "BCLP Plaintiffs") (collectively, "Plaintiffs") submit this Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendants Mondelēz Global LLC ("Mondelēz") and Bryan Cave Leighton Paisner LLP ("BCLP") (collectively "Defendants") do not oppose the relief requested in this Motion.

After more than a year of litigation and several months of hard-fought settlement negotiations, the Parties have reached a settlement that provides substantial benefits to the Settlement Class.[1] For the reasons set forth herein, the Settlement is fair, reasonable and adequate.

II. **STATEMENT OF FACTS**

This litigation arises from a data security incident discovered by BCLP on or about February 27, 2023 (the "Data Security Incident") through which unauthorized cybercriminals gained access to BCLP's network. Plaintiffs allege that during the Data Security Incident, cybercriminals gained access to Plaintiffs' and the Settlement Class Members' personally identifiable or protected health information ("PII/PHI"), including the PII/PHI of current and former employees of Mondelēz, one of BCLP's clients. Upon discovering the Data Security Incident, Defendants and another of BCLP's clients notified approximately 53,000 individuals that their PII/PHI may have been exposed in the Data Security Incident.

III. **PROCEDURAL HISTORY**

The Mondelēz Plaintiffs filed four class action lawsuits against Mondelēz arising out of the Data Security Incident. On August 15, 2023, these actions were consolidated into *In Re: Mondelēz Data Breach Litigation*. The Mondelēz Plaintiffs filed a consolidated complaint on September 14, 2023. Mondelēz filed a motion to dismiss on November 13, 2023, which the parties fully briefed.

The BCLP Plaintiffs filed two class action lawsuits against BCLP relating to the Data Security

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement attached hereto as Exhibit 1 (the "Settlement Agreement" or "S.A.").

1

Incident. On October 11, 2023, the Court consolidated these actions into *In Re: Bryan Cave Leighton Paisner, LLP Data Breach Litigation*. The BCLP Plaintiffs filed a consolidated complaint on November 10, 2023. BCLP filed a motion to dismiss on January 15, 2023, which the parties fully briefed.

On June 3, 2024, the Court denied in part and granted in part BCLP's and Mondelēz's motions to dismiss in a single order, dismissing all but Plaintiffs' negligence and implied contract claims against Mondelēz and Plaintiffs' negligence claim against BCLP. *See Shields*, Dkt. No. 41; *Flores*, Dkt. No. 45.

On July 15, 2024, after an informal exchange of discovery requests, information, and production of documents by Defendants, the Parties participated in a joint, full-day mediation before experienced mediator, David E. Jones. The Parties were unable to reach a resolution at the mediation. However, the Parties continued their discussions and reached a settlement in principle on July 23, 2024, the terms of which are memorialized in the Settlement Agreement.

## IV. THE SETTLEMENT TERMS

### A. Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "the persons who are identified on the Settlement Class List, including all individuals who were sent notification by BCLP, Mondelēz, or Chicago IVF that their PII/PHI was or may have been compromised in the Data Security Incident." S.A., ¶ 42. Excluded from the Settlement Class are (i) the judges presiding over this Action and members of their direct families; and (ii) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*

### B. Settlement Benefits

The Settlement provides a favorable result for the Settlement Class in the form of a $750,000.00 non-reversionary Settlement Fund, from which multiple forms of Settlement relief will be provided to participating Settlement Class Members. *Id.,* ¶ 45. Under the Settlement, all Class Members are eligible to submit a claim to receive one or more of the following categories of Settlement relief, which shall be paid or funded out of the Settlement Fund: (a) reimbursement of time spent responding to the Data Breach up to five (5) hours at the rate of up to twenty-five dollars ($25.00) per

2

hour; (b) up to $7,000.00 per Settlement Class Member, for reimbursement of Documented Out-of-Pocket Losses incurred as a result of the Data Breach; (c) up to three years of Credit Monitoring and Identity Protection Services. *Id.,* ¶¶ 55-60. In lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses and/or reimbursement for Lost Time, Settlement Class Members may elect to submit a claim for a *pro rata* cash payment from the Residual Settlement Fund. *Id.,* ¶¶ 61. In addition, as the Settlement acknowledges, Defendants have already provided confirmatory discovery evidencing remedial data security improvements designed to help protect Defendants from a future data breach. *Id.,* ¶ 72.

### C. Class Notice and Settlement Administration

Notice will be paid for by Defendants out of the Settlement Fund. Notice will be given to the Settlement Class by directly mailing or emailing Postcard Notices to the addresses associated with the Class Members. *Id.* ¶ 75. A Long Form Notice will also be posted on the Settlement Website, along with other important documents, and will allow Class Members to learn about their rights under the Settlement and to easily submit their claims. *Id.*; *see also infra* at Section VI.D.

### D. Attorneys' Fees, Litigation Expenses, and Service Awards to Plaintiffs

The Parties have agreed that, as part of the Settlement, proposed Class Counsel will seek an award of reasonable attorneys' fees and reimbursement of litigation expenses to be paid by Defendants from the Settlement Fund. As explained in the Notices, the attorneys' fees to be requested by proposed Class Counsel will not exceed $250,000 (one-third of the Settlement Fund) and the request for reimbursement of litigation expenses will not exceed $35,000. Also, in recognition of Plaintiffs' time and effort expended in pursuing the litigation and in fulfilling their responsibilities on behalf of the Class, Class Counsel will ask the Court to approve Service Awards of up to $2,500 for each Plaintiff, payable from the Settlement Fund. S.A., ¶ 94. Plaintiffs and Class Counsel will submit a motion supporting the fee and service award requests prior to the Final Approval Hearing.

### V. LEGAL AUTHORITY

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which court

approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, followed by (2) dissemination of court-approved notice to the class, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63. Plaintiffs request that the Court take the first step and grant preliminary approval of the proposed Settlement Agreement.

## VI. ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Id.,* ¶ 21.632.

### A. The Settlement Satisfies Rule 23(a)

Before assessing the parties' settlement, the Court should confirm the underlying settlement class "will likely be able" to meet the requirements of Rule 23(a) for purposes of judgment on the proposed Settlement. Fed. R. Civ. P. 23(e)(1)(B)(ii); Manual for Complex Litigation (Fourth), § 21.632. The requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here.

#### 1. The Proposed Class is Sufficiently Numerous

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Group, Inc. v. Trynex, Inc.,* 2013 WL 66181, *4 (N.D. Ill. 2013). Here, there are approximately 53,000 class members. Joinder, therefore, is clearly impracticable, and the Settlement Class easily satisfies Rule 23's numerosity requirement.

4

### 2. The Settlement Class Satisfies Commonality

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, whether Class Members' PII/PHI was compromised in the Data Security Incident; whether Defendants owed a duty to Plaintiffs and Class Members to protect their PII/PHI; whether Defendants breached their duties; and whether Defendants violated the common law and statutory violations. Thus, the commonality requirement is met.

### 3. Plaintiffs' Claims Are Typical to Those of the Class

Plaintiffs satisfy the typicality requirement of Rule 23 because their claims, which are based on Defendants' alleged failure to protect the PII/PHI of Plaintiffs and all members of the Class, are reasonably coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege their PII/PHI was compromised, and that they were therefore impacted by the same inadequate data security that harmed the rest of the Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07(N.D. Ill. 2008) (where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). Thus, typicality is met here.

### 4. Plaintiffs Will Adequately Protect the Interests of the Class

The adequacy requirement is satisfied where (1) there are no antagonistic interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *In re TikTok, Inc. Consumer Privacy Litig.*, MDL No. 3948, 2021 WL 4478403, at *7 (N.D. Ill. Sept. 30, 2021).

Here, Plaintiffs are members of the Class who allegedly experienced the same injuries and

5

seek, like other Class Members, compensation for Defendants' alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Class.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Declaration in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement attached hereto as Exhibit 2 ("Federman Decl."), ¶ 15. Thus, Plaintiffs satisfy the requirement of adequacy.

### B. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement

Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over questions affecting only individuals members and class resolution is superior to other available methods for a fair and efficient resolution. *Id.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims depend on whether Defendants used reasonable data security to protect their PII/PHI. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and therefore makes a class-wide settlement appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

Further, class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are tens of thousands of Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual

6

lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need *not* inquire whether the case, *if tried*, would present intractable management problems") (emphasis added).

Certification of the Settlement Class for purposes of settlement is appropriate.

### C. The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e)

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of complex disputes often involved in class action minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes on already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id.* "If the court preliminarily approves the settlement, the class members are notified." *Id.*

Rule 23(e) states that grounds exist for class notice where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here,

7

the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e).

If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.*

Here, the relevant factors support the conclusion that the Settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-deserved reputation as being most complex. *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); *see also Armstrong*, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the Settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. *See* Federman Decl., ¶¶3-9, 12. At the outset of their investigation, Class Counsel conducted extensive research regarding Plaintiffs' claims, Defendants, and the Data Security Incident. *Id.*, ¶¶ 4-5. Class Counsel then fully briefed motions to

8

dismiss filed by Mondelēz and BCLP. *Id.* After receiving the Order allowing at least some of Plaintiffs' claims to survive, Class Counsel requested, and Defendant produced, informal discovery necessary to engage in informed discussions about class resolution. *Id.*, ¶¶6-7. The parties then attended a full-day mediation session, spent weeks thereafter negotiating the material terms of a class settlement, and then an additional two months finalizing the full Settlement Agreement. *Id.*, ¶¶ 7-9.

As such, and considering Settlement Class Counsel's extensive experience in data breach litigation (*see, e.g., id..*, ¶ 15), the Parties were able to enter into settlement negotiations with a full understanding of the strengths and weaknesses of the case, as well as the potential value of the claims. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to privacy class settlement where the parties exchanged discovery over a six-month period and then mediated the case to reach a settlement).

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. Federman Decl., ¶ 17. Further, Plaintiffs retained qualified and competent counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g., Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792; *Armstrong*, 616 F.2d at 315 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Plaintiffs' counsel

9

believe the Settlement is fair, reasonable, and adequate, and in the best interests of the members of the Settlement Class. Federman Decl., ¶ 15. Plaintiffs' Counsel also believes the benefits of the Settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.*

### 2. The Settlement Was Negotiated at Arm's-Length

Here, the Settlement resulted from good faith, arm's-length negotiations over many months, facilitated by a neutral mediator and including a full-day, in-person mediation. *Id.*, ¶ 7. Accordingly, it is clear that that the Parties negotiated the Settlement Agreement at arm's length and absent any fraud or collusion. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 496 (N.D. Ill. 2015) ("The parties were only able to come to an agreement on settlement after engaging in formal mediation with an independent mediator, Judge Andersen. There is no evidence to suggest that the settlement involves any sort of collusion[.]"). This factor thus weighs in favor of preliminary approval.

### 3. The Settlement Provides Meaningful Relief to the Settlement Class

The Settlement Agreement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T*, 270 F.R.D. at 347. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . " *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product

could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

### *a. The Cost, Risk, and Delay of Continued Litigation*

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex").

Indeed, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. The damages methodologies, while theoretically sound in Plaintiff's view, remain largely untested in a disputed class certification setting and unproven in front of a jury. Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly changing nature of case law pertaining to data protection, it is likely that a win by any party would result in appeals, which would further increase costs and extend the time until Plaintiffs and Class Members can have a chance at relief.

While Plaintiffs are confident in their claims, it is obvious that the likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the

11

relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mortg., LLC*, 2016 WL 4505169, at *10 (N.D. Ill. 2016).

### b. *The Method of Providing Relief is Effective*

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

### c. *The Proposed Award of Attorneys' Fees is Fair and Reasonable*

"[T]he terms of any proposed award of attorneys' fees, including timing of payment," are also factors in considering whether the relief is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of attorneys' fees not to exceed 33.33% of the Settlement Fund, or $250,000, and litigation expenses not to exceed $35,000. This percentage fee requested falls well within the range of other approved class settlements, including privacy class settlements. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. at 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.* No. 13-cv-6923, ECF No. 85 (N.D. Ill. Sept. 16, 2015) (awarding fees of 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund") *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (same); *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 17-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees of 35%

of the settlement fund). Plaintiffs' counsel achieved an excellent result for the Settlement Class after undertaking substantial risk in bringing this action on a pure contingency basis.

Prior to final approval, Plaintiffs' counsel will file a motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request. At this stage of the Settlement, the requested fees and costs are clearly within the range of possible approval and support preliminary approval of the Settlement Agreement.

### d. There Are No Additional Agreements Required to be Identified

There are no additional agreements requiring identification pursuant to Rule 23(e)(3). Thus, this factor weighs in favor of preliminary approval.

### 4. The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members as equitably as possible under the circumstances. In considering whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (citations omitted).

Here, the Settlement treats all Class Members equitably. Each and every Class Member has the opportunity to make the same claims for benefits under the Settlement. S.A., ¶¶ 55-61. While Class Counsel may seek approval of service awards to Plaintiffs, as will be explained in the eventual motion for attorneys' fees and service awards, the contemplated awards are in line with those granted in similar cases, are presumptively reasonable, and do not call into question Plaintiffs' adequacy nor the validity of the Settlement. As such, this factor also weighs in favor of approval.

### D. The Notice Plan Satisfies Rule 23 and Due Process Requirements

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified

13

through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* Such notice must be the "best notice practicable," *see id.*, which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Additionally, to satisfy due process, notice to class members must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *See* Fed. R. Civ. P. 23(c)(2)(B).

Here, and following a competitive bidding process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll Settlement Administration ("Kroll")—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via direct U.S. mail or email. Federman Decl., ¶ 14; S.A. ¶¶ 75-77. The costs of administering the Settlement will be paid by Defendants out of the Settlement Fund. S.A., ¶ 53. The Notices and Claim Form negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See* S.A., Exhibits A–C.

In addition to the direct notice, the Settlement Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Postcard Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement. *Id.,* ¶ 75. The Settlement Administrator will also make available a toll-free help line to provide Settlement Class Members with additional information about the settlement. *Id.* The Settlement Administrator is also authorized to provide copies of the forms of Postcard Notice, Long Notice, and Claim Forms approved by the Court, as well as the Settlement Agreement, upon request.

Because the notice plan ensures that Settlement Class Members' due process rights are amply

14

protected, this Court should approve it. *See Hartranft v. TVI, Inc.*, No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving settlement, finding "the proposed notice program is clearly designed to advise the Class Members of their rights.").

### E. Appointment of the Settlement Administrator

To implement the Notice program and administrator the Settlement benefits, the Parties request that the Court appoint Kroll to serve as the Settlement Administrator. Kroll has a trusted and proven track record of administering thousands of class actions. Federman Decl., ¶ 14.

### F. Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Federman Decl., ¶ 15, Exhibits A-D.

## VII. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with significant relief. For all the above reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: October 4, 2024

Respectfully Submitted,

By: _/s/ A. Brooke Murphy_
A. Brooke Murphy
MURPHY LAW FIRM
4116 Will Rogers Pkwy, Suite 700 Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

Gary M. Klinger
MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: (866) 252-0878
Email: gklinger@milberg.com

Raina Borrelli
STRAUSS BORRELLI, PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: 872.263.1100
raina@straussborrelli.com

William B. Federman
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
E: wbf@federmanlaw.com

*Proposed Class Counsel*

## CERTIFICATE OF SERIVCE

I hereby certify that on October 4, 2024, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

_/s/ A. Brooke Murphy_

16