UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MONDELĒZ DATA BREACH LITIGATION | Master File No. 1:23-cv-03999<br><br>Hon. Jorge L. Alonso |
| IN RE: BRYAN CAVE LEIGHTON PAISNER, LLP DATA BREACH LITIGATION | Master File No. 1:23-cv-04249<br><br>Hon. Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
<u>FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

i

I.      **INTRODUCTION**

On October 10, 2024, this Court preliminarily approved a settlement between Plaintiffs Michael Shields, Daniel Berndt, Augustyn Wiacek, Deidra Clay, Julio Perez, Eric Flores, and Rock Meyer (collectively, "Plaintiffs"), on one hand, and Defendants Bryan Cave Leighton Paisner LLP ("BCLP") and Mondelēz Global LLC (collectively, "Defendants"), on the other hand. (ECF No. 57). The Settlement is an excellent result for the Settlement Class, and includes substantial monetary benefits, identity theft protection, and insurance.[1] Specifically, the Settlement provides the Settlement Class with a $750,000.00 non-reversionary Settlement Fund, from which multiple forms of relief will be provided to participating Settlement Class Members. (SA, ¶¶ 45, 50, 55–61). Under the Settlement, all Settlement Class Members are eligible to submit a claim to receive one or more of the following categories of Settlement relief, which shall be paid or funded out of the Settlement Fund: (i) reimbursement of time spent responding to the Data Security Incident up to five (5) hours at the rate of up to twenty-five dollars ($25.00) per hour ($125.00 maximum); (ii) up to $7,000.00 per Settlement Class Member, for reimbursement of Documented Out-of-Pocket Losses incurred as a result of the Data Security Incident; and (iii) up to three (3) years of Credit Monitoring and Identity Protection Services. (*Id.* ¶¶ 55–60). In lieu of receiving a reimbursement for Documented Out-Of-Pocket Losses and/or reimbursement for Lost Time, Settlement Class Members may elect to submit a claim for a *pro rata* cash payment from the Residual Settlement Fund. (*Id.* ¶ 61). In addition, BCLP already provided confirmatory discovery evidencing remedial data security improvements designed to help protect it from a future data breach. (*Id.* ¶ 72). This is a superb result for the Settlement Class considering the complex legal claims and class certification issues data breach class actions often face.

The Settlement involved a comprehensive notice program and user-friendly claims process, which have been, and are being, implemented by the Settlement Administrator, Kroll Settlement Administration, LLC ("Kroll"). (*See* Declaration of Scott M. Fenwick of Kroll Settlement

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement (Case No. 1:23-cv-03999, ECF No. 54-1) (the "Settlement Agreement" or "SA").

1

Administration LLC in Connection with Final Approval of Settlement ("Kroll Decl."), ¶¶ 9–17 (attached hereto as **Exhibit 1**)). The deadline to submit a claim is February 10, 2025. (*Id.* ¶ 13). The Court-approved notice program provided for direct notice by mail and the creation of a Settlement Website. (*Id.* ¶¶ 9–12).

The reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval. The deadline to file objections or to request exclusion is January 13, 2025. (*Id.* ¶ 16). To date, **no** objections and **no** requests for exclusion have been received. (*Id.* ¶ 17). The current claims rate—which is likely to increase before the Claims Deadline—is already 6.61%. (*Id.* ¶ 14).[2] The claims rate here already far exceeds the claims rate of many other data breach settlements across the nation.[3] Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks they would face through continued litigation, the Settlement is fair, reasonable, and adequate, and merits final approval.

## II. SUMMARY OF THE LITIGATION

In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, Plaintiffs' Memorandum of Law in Support of Plaintiffs' Amended Motion for Attorneys' Fees, Costs, and Expenses (ECF No. 64) and Plaintiffs' Memorandum of Law in

---

[2] However, Kroll is still in the process of reviewing and validating Claim Forms and the deadline to submit a claim is not until February 10, 2025. (Kroll Decl., ¶ 14).

[3] *See In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *Fox v. Iowa Health Sys.*, No. 18-C-327, 2021 WL 826741, at *2 (W.D. Wis. March 4, 2021) (claims rate of approximately 1%); *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (claims rate of 1.56%); *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (claims rate of approximately 2.56%); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate … is on par with other consumer cases, and does not otherwise weigh against approval); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding 1.8% claims rate reflects positive reaction by class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (approving claims rate of 0.66%).

Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 54).

### III. SUMMARY OF THE TERMS OF THE SETTLEMENT AGREEMENT

#### A. Settlement Class.

The Court previously certified, for settlement purposes only, the following Settlement Class:

> The persons who are identified on the Settlement Class List, including all individuals who were sent notification by BCLP, Mondelēz, and Chicago IVF that their PII/PHI was or may have been compromised in the Data Security Incident.[4]

(ECF No. 57).

#### B. Settlement Benefits.

The Settlement provides a comprehensive benefits package to Settlement Class Members, including a non-reversionary Settlement Fund of $750,000.00. (SA, ¶¶ 45, 50). All Settlement Class Members are eligible to submit a claim to receive one or more of the following benefits, funded from Settlement Fund: (i) reimbursement of time spent responding to the Data Security Incident up to five (5) hours at twenty-five dollars ($25.00) per hour; (ii) up to $7,000.00 per Settlement Class Member for reimbursement of Documented Out-of-Pocket Losses; (iii) up to three (3) years of three-bureau Credit Monitoring and Identity Protection Services provided by Kroll. (*Id.* ¶¶ 55–60). In lieu of submitting a claim for Documented Out-Of-Pocket Losses and Lost Time, Settlement Class Members may opt to submit a claim for a *pro rata* cash payment from the Residual Settlement Fund. (*Id.* ¶ 61). Additionally, Defendants have also provided confirmatory discovery regarding data security improvements designed to help protect Plaintiffs' and Settlement Class Members' PII/PHI still in their possession. (*Id.* ¶ 72).

#### C. Attorneys' Fees, Expenses, and Service Awards.

On December 30, 2024, Plaintiffs filed a motion requesting (i) an award of $250,000.00 in

---

[4] "Excluded from the Settlement Class are the judges presiding over this Action and members of their direct families, and Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline." (ECF No. 57).

3

attorneys' fees; (ii) reimbursement of reasonable litigation expenses in the amount of $12,284.08; and (iii) Service Awards of $2,500.00 for each of the Class Representatives ($17,500.00 total). (ECF No. 64; SA, ¶¶ 94, 96). These requests are contemplated by the Settlement Agreement and were clearly delineated in the notice materials sent to the Settlement Class. (SA, ¶¶ 94, 96). To date, no objections have been received. (Kroll Decl. ¶ 17). If approved, these amounts will be paid from the Settlement Fund. (SA, ¶¶ 94, 96).

## IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

On October 10, 2024, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure ("Rule") 23(a)—numerosity, commonality, typicality, and adequacy—and the predominance and superiority requirements of Rule 23(b). (ECF No. 57). Since this Order, there have been no developments that would alter this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

### A. The Rule 23(a) Requirements Remain Satisfied.

***Numerosity.*** Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. 2013). Here, there are approximately 48,279 Settlement Class Members. (Kroll Decl., ¶ 5).[5] Joinder is therefore impracticable, and the Settlement Class satisfies the numerosity requirement under Rule 23. *See, e.g., Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (class of 40 or more is sufficient).

***Commonality.*** The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues

---

[5] "Kroll previously reported to Settlement Class Counsel that the de-duped Settlement Class List contained 48,292 unique records. This was inaccurate. This number inadvertently contained an additional 13 test records that are not Settlement Class Members. These test records are used by Kroll to confirm the functionality of the website and database. The correct number is 48,279." (Kroll Decl., ¶ 5, fn 2).

4

all center on [defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, (i) whether Settlement Class Members' PII/PHI was compromised in the Data Security Incident; (ii) whether Defendants owed a duty to Plaintiffs and Settlement Class Members to protect their PII/PHI; (iii) whether Defendants breached their duties; and (iv) whether Defendants violated the common law and statutory violations. Thus, the commonality requirement is met.

*Typicality.* Plaintiffs satisfy the typicality requirement under Rule 23 because their claims, which are based on Defendants' alleged failure to protect the PII/PHI of Plaintiffs and all members of the Settlement Class, are reasonably coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege their PII/PHI was compromised, and that they were therefore impacted by the same inadequate data security that harmed the rest of the Settlement Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (where the defendant engages "in a standardized course of conduct vis-avis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). As such, typicality is met here.

*Adequacy.* The adequacy requirement is satisfied where (i) there are no antagonistic interests between named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *In re TikTok, Inc. Consumer Privacy Litig*., MDL No. 3948, 2021 WL 4478403, at *7 (N.D. Ill. Sept. 30, 2021). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendants' alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well

suited to advocate on behalf of the Settlement Class. (*See* Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), ¶ 15 (ECF No. 54-2)). Accordingly, the adequacy requirement is satisfied.

### B. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied.

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3), which has two (2) components: (i) predominance; and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is the superior method for the fair and efficient resolution of the matter. *Id.*

***Predominance.*** The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims depend on whether Defendants used reasonable data security to protect their PII/PHI. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, and therefore makes a class-wide settlement appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

***Superiority.*** Furthermore, Settlement Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for

settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems") (emphasis added).

In sum, certification of the Settlement Class for purposes of settlement is appropriate.

## V. THE SETTLEMENT MERITS FINAL APPROVAL

A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement is fair, adequate, and reasonable the Court considers the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These considerations overlap with the factors previously articulated by the Seventh Circuit prior to the amendment of Rule 23 in 2018, which include: (i) the strength of the plaintiff's case compared to the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement; (iv) the presence of collusion in gaining a settlement; and (5) the stage of the proceedings and the amount of discovery completed. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2013 WL 1287054, at **12–13 (S.D. Ill. Mar. 28, 2013) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997)). The record in this case makes clear that approval of the Settlement is warranted under these factors.

### A. Fed. R. Civ. P. 23(e)(2)(A): Class Representatives and Class Counsel have Adequately Represented the Settlement Class.

Class Counsel have ample experience litigating data breach class actions and are well-versed in the legal claims at issue and the risks of this case. (Federman Decl., ¶ 15). Since the inception of this litigation, they have worked diligently to advance Plaintiffs' and the other Settlement Class Members' interests. (*Id.* ¶¶ 3–9). Prior to reaching the Settlement, Class Counsel researched and drafted the complaints, successfully opposed Defendants' motions to dismiss, conducted informal discovery, and participated in mediation and settlement negotiations. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citations and quotations omitted); *see also* Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations); *id*. § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery"). The procedural history of the case supports finding that Plaintiffs and the Settlement Class were adequately represented.

Moreover, Plaintiffs are adequate representatives of the Settlement Class. Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at **15–16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. (Federman Decl., ¶ 17). Therefore, this factor favors final approval of the Settlement.

### B. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's-Length.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011).[6]

Here, the Settlement resulted from good faith, arm's-length settlement negotiations over many weeks, including a mediation session with experienced mediator Hon. David E. Jones (Ret.). (Federman Decl. ¶ 7). At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length. (*Id*. ¶ 10). While resolution was not achieved during mediation, discussions continued, culminating in a settlement in principle on July 23, 2024. (*Id*. ¶¶ 7–9). Therefore, this factor also supports final approval of the Settlement. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of [arm's length] negotiation.").

### C. Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief for the Settlement Class.

#### 1. Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risks, and Delay of Trial and Appeal Favor Final Approval.

"The most important factor relevant to the fairness of a class action settlement is […] the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement."

---

[6] *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator[ ] helps to ensure that the proceedings were free of collusion and undue pressure."); *Johnson v. Brennan*, No. 10-4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (The participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive."); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. 08-482, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

9

*Synfuel Techs, Inc.*, 463 F.3d at 653 (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002).

The Settlement provides for substantial monetary relief, as well as equitable relief in the form of data security enhancements. All Settlement Class Members are eligible to submit a claim for: (i) reimbursement of time spent responding to the Data Security Incident up to five (5) hours at the rate of up to twenty-five dollars ($25.00) per hour; (ii) up to $7,000.00 per Settlement Class Member, for reimbursement of Documented Out-of-Pocket Losses incurred as a result of the Data Security Incident; and (iii) up to three (3) years of Credit Monitoring and Identity Protection Services provided by Kroll. (SA, ¶¶ 55–60). In lieu of receiving reimbursement for Documented Out-Of-Pocket Losses and/or Lost Time, Settlement Class Members may submit a claim for a *pro rata* cash payment from the Residual Settlement Fund. (*Id*. ¶ 61). BCLP also provided confirmatory discovery of remedial data security improvements to prevent future breaches. (*Id*. ¶ 72).

The value achieved through the Settlement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Although Plaintiffs believe in the merits of their claims, success is not guaranteed. Should litigation continue, Plaintiffs face significant risks. Data breach cases are inherently complex, with novel issues and rapidly evolving laws posing substantial hurdles even at the pleading stage. *See e.g., Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431, at *4 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See e.g., In re Blackbaud, Inc.,*

*Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification); *In Re: Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed motion for class certification). Further, if the litigation were to continue, Defendants would vigorously defend the case, and the litigation could potentially span for years. Considering all of this, Plaintiffs' likelihood of success at trial is far from certain.

Considering these risks, the $750,000.00 non-reversionary Settlement Fund is a substantial recovery for the Settlement Class. The Settlement benefits are, therefore, fair, adequate, and reasonable compared to the range of possible recovery.

### 2. Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Providing Relief is Effective.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

The Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members need only complete a simple Claim Form and submit it with documentation supporting any claimed losses or alternatively select a *pro rata* cash payment. Settlement Class Members may submit claims online or through the mail. (Kroll Decl., at Exs. C, D, and E). The claims administrator, Kroll, is an experienced and nationally recognized class action administration firm. (*Id.* ¶ 2). This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable under the particular circumstances of this case. Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

### 3. Fed. R. Civ. P. 23(e)(2)(C)(iii): the Proposed Award of Attorneys' Fees is Fair and Reasonable.

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." In accordance with Rule 23(e) and the Settlement Agreement, on December 30, 2024, Class Counsel filed a motion seeking $250,000.00 in

11

attorneys' fees and $12,284.08 in unreimbursed litigation expenses. This fee request falls in line with other awards in data privacy cases as discussed in Plaintiffs' Memorandum of Law in Support of Amended Motion for Attorneys' Fees, Costs, Expenses, and Service Awards. (*See* ECF No. 64).

### 4. Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements Are Required to be Identified Under Rule 23(e)(3).

As no additional agreements requiring identification exist, this factor does not weigh either in favor of or against final approval.

### D. Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably.

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any segments of the Settlement Class. All Settlement Class Members are eligible to submit a claim for credit monitoring, up to $7,000.00 for Documented Out-of-Pocket Losses, and up to five (5) hours of Lost Time. (SA, ¶¶ 55, 57). Alternatively, Class Members may elect to receive a *pro rata* cash payment. (*Id.* ¶ 61). Direct Notice was sent to Settlement Class Members, and all have the opportunity to object to or exclude themselves from the settlement. (Kroll Decl., ¶¶ 9–17). While the named Plaintiffs each are seeking a Service Award of $2,500.00 (SA, ¶ 94) for their services on behalf of the Settlement Class, this award is significantly less than the amount that any given Settlement Class Member can claim in reimbursements, and thus, does not create an improper motivation to settle or give rise to undue inequities across the Class.

\* \* \*

As demonstrated by the above, the Settlement is fair, reasonable, and adequate and merits final approval.

### VI. THE NOTICE PROGRAM ADEQUATELY APPRISED CLASS MEMBERS OF THE SETTLEMENT.

The Court appointed Kroll Settlement Administration ("Kroll") to disseminate class notice and to administer the Settlement. (ECF No. 57). In accordance with the Court's directive, Kroll employed direct notice that has been highly effective. On November 12, 2024, Kroll mailed direct

notice of the Settlement to the 48,279 Settlement Class Members. (Kroll Decl., ¶ 9). The direct mailed notice is estimated to have reached approximately 98.40% of the Settlement Class. (*Id.* ¶ 12). This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. (*Id.*).

In addition to the direct mailed notice, Kroll also created a dedicated Settlement Website— www.BCMDLZSettlement.com. (*Id.* ¶ 6). The Settlement Website "went live" on November 12, 2024, and contains a summary of the Settlement, important dates and deadlines such as the date of the Final Approval Hearing, Objection Deadline, Opt-Out Deadline and Claims Deadline, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Postcard Notice, Long Form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, Plaintiff's Motion for Preliminary Approval of the Settlement, the Class Action Complaint, a toll-free telephone number, and allowed Settlement Class Members an opportunity to file a Claim Form online. (*Id.* ¶¶ 6–8).

To date, the Settlement has been well-received by the Settlement Class. Settlement Class Members have until February 10, 2025, to submit a claim. (*Id.* ¶ 13). As of the date of this filing, Kroll has received 1,531 Claim Forms through the mail and 1,660 Claim Forms filed electronically through the Settlement Website. (*Id.* ¶ 14). This equates to a claims rate of approximately 6.61 %. Kroll is still in the process of reviewing and validating Claim Forms, but the claims rate is expected to increase before the deadline. (*Id.* ¶¶ 13–14). To date, Kroll has received no requests for exclusion nor any objections. (*Id.* ¶ 17). It is evident that the Settlement has been well-received by the Settlement Class, meriting final approval.

Plaintiffs submit the Notice program issued pursuant to the Settlement meets the requirements of due process and Federal Rule of Civil Procedure 23 and should be finally approved.

**VII. CONCLUSION**

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant final approval of class action settlement and enter the proposed Order.

| | |
|---|---|
| Date: January 7, 2025 | Respectfully Submitted, |
| | By: */s/ William B. Federman* |
| | William B. Federman |
| | **FEDERMAN & SHERWOOD** |
| | 10205 N. Pennsylvania Ave. |
| | Oklahoma City, OK 73120 |
| | T: (405) 235-1560 |
| | E: wbf@federmanlaw.com |
| | |
| | Gary M. Klinger |
| | **MILBERG COLEMAN BRYSON** |
| | **PHILLIPS GROSSMAN, PLLC** |
| | 227 W. Monroe Street, Suite 2100 |
| | Chicago, IL 60606 |
| | Tel.: (866) 252-0878 |
| | Email: gklinger@milberg.com |
| | |
| | Raina Borrelli |
| | **STRAUSS BORRELLI, PLLC** |
| | 980 N. Michigan Avenue, Suite 1610 |
| | Chicago, Illinois 60611 |
| | Telephone: 872.263.1100 |
| | raina@straussborrelli.com |
| | |
| | A. Brooke Murphy |
| | **MURPHY LAW FIRM** |
| | 4116 Will Rogers Pkwy, Suite 700 |
| | Oklahoma City, OK 73108 |
| | T: (405) 389-4989 |
| | E: abm@murphylegalfirm.com |

**CERTIFICATE OF SERIVCE**

I hereby certify that on January 7, 2025, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ William B. Federman*